Filed 5/15/13  In re Joshua M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JOSHUA M., a Person Coming Under The Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA M.,<br><br>Defendant and Appellant. | F065178<br><br>(Super. Ct. No. JJD065905)<br><br>**OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Hugo J. Loza, Commissioner.

Arthur L. Bowie, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Stephen G. Herndon and Darren K. Indermill, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Wiseman, Acting P.J., Kane, J., and Detjen, J.

## INTRODUCTION

On December 27, 2011, a petition was filed pursuant to Welfare and Institutions Code section 602 alleging 14-year-old appellant, Joshua M., feloniously carried a dirk or dagger (Pen. Code, § 12020, subd. (a)(4)).[1] At the conclusion of a contested jurisdiction hearing on April 25, 2012, the juvenile court found the allegation true beyond a reasonable doubt. At the disposition hearing on May 23, 2012, the juvenile court granted Joshua's motion to treat the felony adjudication as a misdemeanor pursuant to section 17, subdivision (b). We reject Joshua's contention on appeal that there was insufficient evidence before the juvenile court that he possessed a dirk or dagger.

## FACTS AND PROCEEDINGS

On December 22, 2011, at 5:30 p.m., Detective Hector Rodriguez of the Tulare County Sheriff's Department was working with the gang violence suppression unit and contacted Joshua at the corner of Avenue 404 and Muller Road in Cutler. Joshua was with three other people. Rodriguez asked the group if anyone had any weapons. Joshua replied that he had a sharp screwdriver in one of his pockets.

While conducting a pat-down search of Joshua, Rodriguez found what initially appeared to be a screwdriver. Upon closer inspection, Rodriguez determined the object was a current tester, five inches long with a clear yellow handle that was partly broken. The current tester was received into evidence as People's exhibit no. 1.

Rodriguez testified that a current tester is usually connected by a wire to something else that registers whether or not there is an electrical current. This object had no wire, Joshua had no wires on his person, and there was no other device attached to the object. When Rodriguez asked Joshua if he was doing electrical work, Joshua replied

---

[1]     Unless otherwise noted, all statutory references are to the Penal Code. Section 12020, subdivision (a)(4) was reenacted by the Legislature without substantive change as section 21310, with an operative date of January 1, 2012.

that he was not. Joshua told Rodriguez that he was a Northern gang associate and Southern gang members were his enemies. Joshua later admitted that he needed the tester for protection from Southern gang members.

Rodriguez explained that the object found on Joshua could be used as a stabbing weapon, and a month or two earlier, he had investigated a stabbing where a similar type of weapon was used. The tip of the instrument in that crime came within an inch of the victim's lung. Had the instrument hit the victim's lung, it would have caused great bodily injury. In Rodriguez's opinion, the object he found on Joshua was a stabbing weapon capable of causing great bodily injury.

Joshua's mother testified that she had a loose headlight on her Chevy Tahoe and Joshua would fix it when it went out. On December 22, 2011, Joshua's grandmother brought out a toolbox and Joshua started fixing the headlight to his mother's vehicle. When shown the object taken from Joshua, his mother said she had seen it before because it was an electricity tester Joshua had used. The tester had an attached cable. The last time Joshua's mother saw the tester, it was not broken.

Joshua's grandmother testified that she gave Joshua a box of tools to fix the headlight to his mother's vehicle and Joshua had used a current tester during the repair. The grandmother testified that the wire was missing from the tester but Joshua attached a cord to it in order to use it.

Joshua testified that he and his mother went to his grandmother's house to fix the headlight to his mother's vehicle. A wire was disconnected from the headlight so Joshua used the electric tester. The tester is connected to a wire and light bulb. Joshua had all of those items, but placed the tester in his pocket and the other items back into the tool box. Joshua did not plan to keep the tester in his pocket and forgot to put it back into the tool box. Joshua did not believe the tester could be used for protection.

Joshua told the detective he was a Northern associate because he was stopped with friends who were Northerners and felt he had no other choice than to state that gang as his affiliation. Joshua was not afraid of Southern gang members. Joshua had other friends who were Northerners and who were unaffiliated with any gang.

At the conclusion of the prosecution's case, defense counsel made a motion pursuant to Welfare and Institutions Code section 701.1 to dismiss the allegation, arguing there was insufficient evidence that the tester could be used to commit great bodily injury, or any type of injury. Defense counsel also argued that the object was not much different from a fountain pen or a ballpoint pen and therefore could not qualify as a dirk or dagger. Defense counsel stated she was not suggesting that "the [c]ourt stab itself with the tester" because "[i]t would hurt, but I don't think you would die from it or even have to have stitches."

The court described its observations of the tester, which was in evidence. The court explained that although the tester was not an ice pick or a screwdriver, "it certainly has a very, very sharp point." The metal portion of the point was about three-quarters of an inch held within a piece of plastic that was not sharp. The court found the tester was sharp enough to stab someone because it was "almost like a spear." Although the piece of metal was small, it was very sharp, much sharper than a screwdriver.

The combination of the metal tip and plastic could create a potential wound of approximately two and a half inches. At first, the court noted the device was two and a half inches long, but later found it was three inches long. The court stated that the device was more akin to an ice pick. The only difference the court found between an ice pick and the tester was that the metal tip of the tester was not as long. The court concluded the tester could be used as a stabbing instrument and "could cause some pretty serious damage." The court denied defense counsel's motion to dismiss the allegation.

4

In finding the allegation true, the juvenile court noted that the tester was broken and Joshua was walking around with it concealed in his pocket. The court found that Joshua's admission of gang association was relevant because those involved in gangs are involved in fights and circumstances where they attack or are attacked by others and therefore carry weapons. The court concluded that the tester qualified as a dirk or dagger that could be used to stick into someone's body, especially where there is soft tissue like a stomach or an eye, and it was capable of causing a significant amount of damage.

**DISCUSSION**

Appellant argues that there was insufficient evidence as a matter of law that the electrical tester was a dirk or dagger as defined by section 12020, subdivision (a)(4). Joshua argues that he was merely carrying a current tester he recently used to repair his mother's vehicle and that it was not designed as, nor was it, the type of tool that could be used as a dirk or dagger. We disagree.

In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence -- evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. It is the jury, not the appellate court, which must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320 and *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

5

In reviewing a challenge to the sufficiency of the evidence, appellate courts do not determine the facts. We examine the record as a whole in the light most favorable to the judgment and presume the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129 [disapproved on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151]; *People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Unless the testimony of a single witness is physically impossible or inherently improbable, it is sufficient for a conviction. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

The statutory definition of a dirk or dagger is "a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death." (§ 12020, subd. (c)(24);[2] *People v. Rubalcava* (2000) 23 Cal.4th 322, 330 (*Rubalcava*).) In so defining a dirk or dagger, the Legislature recognized that its revised definition from an earlier version of the statute could potentially criminalize the innocent "carrying of legal instruments such as steak knives, scissors and metal knitting needles." The Legislature, however, concluded that there was no need to carry such items concealed in public. A violation of section 12020 is a general intent crime and does not require a specific intent for unlawful use. (*Rubalcava*, at p. 330.)

The tester was either dismantled or broken and no longer contained wires and apparently could no longer be used for its intended purpose as a testing tool. Joshua concealed the tester in a pocket. Joshua told Detective Rodriguez that he was not doing electrical work. The detective testified that a similar device had been used in a prior assault. This is evidence that such a device could be used to stab a person.

---

**2**    Section 12020, subdivision (c)(24) was reenacted by the Legislature without substantive change as section 16470, with an operative date of January 1, 2012.

The juvenile court described the tester as being as sharp as an ice pick with a short metal tip of three-quarters of an inch and a total length of about three inches. The court further described the tester as almost like a spear and sharper than a screwdriver. The court found that the tester could be used to cause great bodily injury to eyes or other soft tissue. There was substantial evidence before the juvenile court that the electrical tester met the statutory definition of a dirk or dagger, a device that was concealed and capable of inflicting great bodily injury.[3]

## DISPOSITION

The orders of the juvenile court are affirmed.

---

[3] Specific intent to commit an offense with a dirk or dagger is not necessary to violate section 12020. (*Rubalcava*, *supra*, 23 Cal.4th at pp. 330-331.) Evidence adduced at the hearing shows that Joshua was aware of the electrical tester's presence and he had the general intent to possess a dirk or dagger for potential use as a stabbing instrument.